UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAULINE W. ALDRICH,<br><br>                              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | CASE NO.  10-05344 BHS-JRC<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 4, 2011 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4); and, as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed. (See ECF Nos. 12, 16, 17.)

At 5'1", and weighing between 335 and 400 pounds, plaintiff has long found it difficult to function.  She suffers from a variety of related medical conditions, including fibromyalgia, chronic pain syndrome, degenerative disc disease, and sleep apnea.  As a result of all of these conditions, she finds it difficult to perform even simple tasks such as sitting more than 20 minutes, walking with a 4-wheel-walker for more than 200 feet, or even lifting more than a small carton of milk.

REPORT AND RECOMMENDATION - 1

Despite repeated suggestions by her health care providers to improve her diet and increase her activity, plaintiff has been unable to control her obesity. This undoubtedly has resulted in aggravation of her other related conditions, as well.

The Administration has issued rulings regarding how to evaluate cases such as this, and the ALJ in this instance has ignored those rulings and instead stated that plaintiff's failure to lose weight "suggests that her symptoms are not as severe as she alleges," concluding that she is capable of sedentary work.

This is at odds with the opinions of her treating and examining medical health care providers, who consistently state that she is not employable.

Although this is the second time this matter is before the court and this court is recommending that the ALJ's decision be reversed, again, there are a number of questions that remain regarding whether an award of benefits should be made in this case. Therefore, this court recommends that the case be remanded for further proceedings consistent with this decision.

## BACKGROUND

Plaintiff Pauline Aldrich was born in 1960. She completed her high school education and two years of college, but received no degree (Tr. 636). She has worked in several capacities, including receptionist, raising and training horses, refuse hauler, and private health care provider (id.). Her medical problems and physical impairments appeared to have begun in 1993 following an injury to her mid-lower back when she slipped and fell on a wet floor (id.). She has not worked since May of 2000 (Tr. 137).

The medical evidence submitted demonstrates that plaintiff suffers from, among other things, morbid obesity, fibromyalgia, degenerative disk changes of the cervical and lumbar spine, chronic pain, and sleep apnea (Tr. 629). She is 5'1" and her weight fluctuates between 335 and

400 pounds (see, e.g., Tr. 553, 580, 689, 683, 681).  She has a body mass index ("BMI") over 60 (Tr. 391). A person with a BMI of 40 is the highest Level III obesity, which is considered "extreme."  SSR 02-1p, 67 FR 57859, 2002 WL 31026506.  Level III obesity represent "the greatest risk for developing obesity-related impairments."  Id.  Plaintiff's BMI is 20 points higher than this "extreme" level.

There is contradictory evidence in the record regarding the effect of these conditions on Ms. Aldrich's daily activities.  At the hearing, Ms. Aldrich testified that she was unable to work because of these conditions and that the maximum time that she is able to sit is 20 minutes (Tr. 631).  She claims that she can only walk with a 4-wheel walker no more than 20 to 100 feet (id.). She reports that she feels like she has been run over by a Mac truck (id.).  The pain is so great that she wakes up in tears and is exhausted all day.  Furthermore, she has problems with her hands and fingers that tighten up and won't move.  She cannot stand long enough to do housework and has not done any yard work or gardening.  She reports that she is in "excruciating pain" (Tr. 632).

These claims are supported by medical evidence. Treatment records from plaintiff's long-term health care providers, Jamestown Health Clinic, note "decreased grip strength both hands"(Tr. 737), "significant disability from pain" (Tr. 736), "'excruciating pain' when she moves around" (Tr. 735), "she takes 'four pain med' just to take a shower'" (Tr. 735), and "[patient] unable to do household chores etc" (Tr. 731).  When asked about daily activities, plaintiff reported "'I can make it to the bathroom now'; [however], [patient] still unable to do household chores etc." (Tr. 727).

On the other hand, there is also some evidence in the record that she has a higher degree of functionality.  Donna J. West, ARNP noted that the prescribed narcotics worked well in

controlling her pain and that she was "taking short walks daily," "increasing her distance and endurance, slowly improving" . . . [as well as making] "plans to start gardening w/in the next month." (Tr. 708.) On successive visits, Ms. Aldrich advised Ms. West that she "has been more mobile since starting the long-acting pain medication" (Tr. 702), "working outside doing some light gardening" (Tr. 701), and generally more active "in the spring and summer months because of gardening." This was consistent with neurological evaluations, which showed that she had "good range of motion in all directions, normal muscle tone and bulk, 5/5 muscle strength in all major muscle groups and no abnormal reflexes" (Tr. 630). Peter Nora, M.D. states that plaintiff "has good balance, strength and does not have abnormal reflexes." (Tr. 630.)

What is quite apparent is that any functionality plaintiff does have is largely the result of a considerable regimen of prescription drugs. Plaintiff has been prescribed, among other things, Oxycontin (Tr. 666, 707, 725), Oxycodone (Tr. 735,739, 741, 742), Roxicet (Tr. 738, 741), Methadone (Tr. 729, 732), and MS Contin (Tr. 724, 726, 727, 728). Although her health care providers generally state that she is compliant with her dosing schedule (Tr. 708, 715, 723, 725, 727), there is at least one notation that plaintiff has taken more than the prescribed amounts of narcotics. (Tr. 733). Many of her visits to the health clinic were for the purpose of renewing her considerable prescriptions. (See, e.g., Tr. 689, 692, 696, 706, 733, 739, 741.) On a number of occasions, plaintiff was advised to lose weight, increase her physical activity and stop smoking, but she has demonstrated no ability to do any of these things on a consistent basis. (See, e.g., Tr. 545, 548, 678, 680, 682, 689, 692, 694, 695, 708, 722, 736, 737.) She is a candidate for bariatric or lap band surgery, but has been unable to receive funding for this surgery, as the waiting list is very long. (See, e.g., Tr. 554, 737, 741, 743, 744.)

Significantly, every one of her medical providers who has ventured an opinion on the subject has reported that Ms. Aldrich is incapable of performing work. Kari D. Olsen, M.D., of Jamestown Family Health Clinic, who has been plaintiff's long-term treating physician, reported to the Department of Social and Health Services that Ms. Aldrich was "Severely Limited/No Work" (Tr. 506). Larri Ann Bond M.D., who on referral evaluated plaintiff for chronic pain observed that plaintiff was "unable to seek active employment due to significant disability from pain." (Tr. 736). Donna West, ARNP, with Jamestown Family Health Clinic, and who has been working with plaintiff on a pain management plan for some time concluded on November 27, 2009, that "[a]t this time, Pauline is not employable because of the aforementioned disabilities. We are working on a pain management plan that will relieve Pauline's pain and improve her functionality.  However, even with an increase in functionality, I do not anticipate any change in Pauline's employability status in the future."  (Tr. 571).

There was no medical evidence from a treating or examining physician that Ms. Aldrich was capable of working.  One physician, Peter C. Nora, M.D., F.S.C.S., who saw plaintiff for a neurological evaluation on referral from Dr. Olsen, stated on April 11, 2007 that despite her neck and low back pain and morbid obesity ("weighing between 350 and 400 pounds"), plaintiff was "very, very active in terms of physical work around her house." (Tr. 553.)  Admittedly, he only saw her on one occasion and spent only 45 minutes with her, and "50 percent was spent counseling and coordinating the patient's care." (Tr. 555.) He did not conduct any functionality tests and did not provide any opinion regarding her employability.  He noted a number of problems that would limit her functionality, however, including large disc herniation at the C6-C7 level causing enclosure on the cervical spinal cord and enlarging disc herniation centralized at C5-C6. (Tr. 554.)  He anticipated in the "not-too-distant future" that she would warrant neck

surgery, but was reluctant to recommend this because of her "overall risk profile for anterior cervical surgery." (Tr. 554.) He suggested considering "Lap-Band or other gastric bypass type procedure," presumably to address plaintiff's obesity, because it would make her cervical surgery "more safe." (Tr. 554.)

The only physician who offered a medical opinion that plaintiff was capable of working came from a non-examining physician with Disability Determination Service, who reviewed plaintiff's medical records way back in June of 2005, shortly after plaintiff had filed a social security claim. (See Tr. 391-98.) Robert G. Hodkins, M.D. noted diagnosis of right rotator tear, "A/C jt DJD with spurs," "moderate C5-6 DDD" (degenerative disc disease), and BMI 60+ (Body Mass Index of +60, aka extreme obesity). After filing out an evaluation form, Dr. Hodkins concluded: "Cl[ien]t appers (sic) capable of light-work parameters with some limitations." (Tr. 398.) No further explanation was provided. Dr. Hodkins made no reference to plaintiff's fibromyalgia, sleep apnea, or chronic pain syndrome. He did not conduct any examination of plaintiff. Nor has any reviewing or examining physician on behalf of the Administration provided any opinion regarding plaintiff since 2005.

## PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Supplemental Income Benefits on April 12, 2005 (Tr. 329). The application was denied initially and upon reconsideration (Tr. 298, 302, 303). Ms. Aldrich's hearing was conducted by an Administrative Law Judge on May 3, 2007 (Tr. 572-611). An unfavorable ALJ decision was rendered on June 20, 2007 (Tr. 14-25). While the ALJ found that plaintiff had severe impairments at Step 2, the ALJ also found that based on plaintiff's past relevant work and residual functional capacity, plaintiff could perform work existing in significant numbers in the national economy (Tr. 24, Finding 9).

Following the ALJ's adverse decision, Ms. Aldrich filed a timely Request for Review with the Social Security's Appeals Council (Tr. 12-13), which denied her Request for Review (Tr. 6-8), leaving the ALJ's decision as the final administrative decision.

Plaintiff sought additional review in this court. This court remanded Ms. Aldrich's claim for further consideration (Tr. 635-40). The court found that the ALJ erred in the assessment of Ms. Aldrich's severe impairments (Tr. 639), specifically in failing to include fibromyalgia as a "severe" impairment despite adequate evidence indicating otherwise (id.). The court remanded this matter for further proceedings, including a re-evaluation of Ms. Aldrich's residual functional capacity and "Ms. Aldrich's credibility in light of the fibromyalgia impairment" (Tr. 640). Based on this court's order, the Appeals Council vacated the prior unfavorable ALJ decision and then remanded the case for further proceedings (Tr. 641-42).

The second ALJ hearing was conducted on August 3, 2009 (Tr. 755-83). An unfavorable ALJ decision was rendered on September 14, 2009 (Tr. 623-34). Ms. Aldrich filed a timely statement of exceptions to the unfavorable ALJ decision on March 29, 2010 (Tr. 622). The Appeals Council found no reason to assume jurisdiction and held that the unfavorable ALJ decision was the final decision of the Commissioner after remand by the Court (Tr. 612-14).

This appeal followed. Plaintiff alleges the following errors:

1. The ALJ erred in failing to address the plaintiff's obesity.

2. The ALJ erred in her assessment of plaintiff's fibromyalgia.

3. The ALJ's determination regarding plaintiff's credibility was not supported by the substantial evidence of record and is contrary to law.

4. The ALJ's assessment of medical opinion evidence is not supported by the substantial evidence and is contrary to law.

5. The ALJ's assessment that Step 5 was not supported by the substantial evidence and is contrary to law.

ECF No. 12.

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* Magallenes, 881 F.2d at 750). However, the Commissioner "may not reject 'significant probative evidence' without explanation." Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." Flores, 49 F.3d at 571.

## DISCUSSION

1. The ALJ erred in failing to address the plaintiff's obesity.

Plaintiff claims that the ALJ erred by not citing the Social Security Ruling 02-1, which is the Commissioner's Policy Interpretation Ruling, to be used in evaluating disability claims relating to obesity. SSR 02-1p, 67 F.R. 57859, 2002 WL 31026506. The ALJ failed to consider this ruling at any step in her decision. (See Tr. 626-34.)

Although Social Security Rulings do not have the same force and effect as a statute or regulation, they are binding on ALJ's and the Administration, generally, in accordance with 20 CFR 402.35(b)(1).

This Ruling notes that when considering obesity, the evaluator should determine whether:

- The individual has a medically determinable impairment
- The individual's impairment(s) is severe
- The individual's impairment(s) meets or equals the requirements of a listed impairment in the listing
- The individual's impairment(s) prevents him or her from doing past relevant work or other work that exists in significant numbers in the national economy.

67 F.R. at 57861.

The ruling further notes that "adjudicators [are] to consider [the] effects [of obesity] when evaluating disability, . . . including when assessing an individual's residual functional capacity." Id. at 5860.  Courts generally agree that failure of the Administration to give adequate consideration to the effect of a claimant's obesity in combination with other severe impairments is error.  See, e.g., Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009); Hamby v. Astrue, 260 F. App'x 108, 112 (10th Cir. 2008); see also Baker v. Barnhart, 84 F. App'x 10, 14 (10th Cir. 2003).

Furthermore, failure to follow recommended treatment rarely is used to deny or cease benefits.  67 F.R. at 57864.  See McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988).  The reason is evident from the Ruling itself.  "Treatment for obesity is often unsuccessful.  Even if treatment results in weight loss at first, weight lost is often regained, despite the efforts of the individual to maintain the loss."  Id. at 57861.  "People with extreme obesity, even with treatment, will generally continue to have obesity.  Despite short-term progress, most treatments for obesity do not have a high success rate."  Id. at 57863-64.  "Generally, physicians recommend surgery when obesity has reached level III (BMI 40 of greater)."  Id. at 57864. "Because of the risks and potential side effects of surgery for obesity, we will not find that an individual has failed to follow prescribed treatment for obesity when the prescribed treatment is surgery."  Id.

A "treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."  Id.  "Therefore, we will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful.  The obesity must be expected to improve to the point at which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s)."  Id.  Additionally, the Ruling notes that failure to follow the recommendations

to lose weight and receive surgery should not be considered if the individual is unable to afford the prescribed treatment. Id.

In essence, this Ruling stands for the proposition that obesity may be a lifelong problem and the ability of a person to address it successfully is not determinative. Instead, the ALJ should consider the impact on residual functional capacity caused by obesity in determining whether to award benefits.

In this case, the ALJ did exactly the opposite. Not only did she fail to consider the impact of plaintiff's obesity and her related impairments when evaluating plaintiff's residual functioning capacity, but she explicitly found that plaintiff's failure to follow her doctors' advice to lose weight and exercise "suggests that her symptoms are not as severe as she alleges." (Tr. at 632.)

Nor is this error harmless. As noted in the Ruling, "[A]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain function over time. . . . [O]ur assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to work activity. This may be particularly true in cases involving sleep apnea." 67 F.R. at 57862-63.

All of these issues are present in this case, and the ALJ gave short shrift to all of them. No physical assessment was performed. No functional tests were performed. No physical capacities were measured. The ALJ simply picked out several notes raising possible

REPORT AND RECOMMENDATION - 11

contradictory statements from the medical records and then gave a broad hypothetical question to the vocational expert, whose opinion served as the basis for her decision. (See Tr. 778-80.)

This is insufficient. The ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981)). Nor is the ALJ relieved of this obligation if the records contain ambiguities, such as the case here. The ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

The case should be reversed and the ALJ should be instructed to evaluate fully and properly plaintiff's obesity in light of Ruling 02-1p. This would include an updated functional capacity assessment. We do not know what plaintiff is truly capable of doing and without more current information, no substantial evidence supports this determination.

2. The ALJ erred in her assessment of plaintiff's fibromyalgia.

Unlike the original ruling in which the ALJ failed to consider fibromyalgia as a severe impairment (Tr. 638-40), on remand the ALJ specifically found at Step 2 that claimant's fibromyalgia was a severe impairment (Tr. 629).

Nevertheless, plaintiff complains that "the ALJ offered no assessment which functional limitations were caused by which impairments, so there is no basis to determine whether the limitation on walking was based on degenerative disk changes, fibromyalgia or obesity, all found to be severe impairments by the ALJ."

There is nothing that requires the ALJ to differentiate between severe impairments when evaluating residual functional capacity. As noted in SR 02-1P, for instance, a finding of obesity, in combination with other impairments, may have an overlapping impact. "[W]e will consider any functional limitations resulting from the obesity in the RFC assessment in addition to any limitations resulting from any other physical or mental impairments that we identify." 67 F.R. 57863.

Again, plaintiff's treating health care providers provided evidence that her impairments made her unemployable. "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, 157 F.3d at 831 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Because the ALJ failed to meet this heavy burden, it is recommended that the case be reversed and the matter remanded for a more thorough review. Although the ALJ noted fibromyalgia as a "severe impairment" (Tr. 629), she failed to provide a clear explanation for her conclusion that plaintiff was employable despite this severe impairment. SSR 96-8p notes that an RFC assessment must include a narrative discussion describing how the evidence supports the conclusion, citing specific medical facts and non medical facts. Instead, in this case, the ALJ incorporated the flawed evaluation performed by the previous ALJ in June of 2007 (Tr. 626, 632) and then gave a somewhat disjointed and inconclusive analysis of symptoms related to fibromyalgia. The diagnosis of "fibromyalgia" was not discussed, at all, in this portion of the ALJ's decision (see Tr. 629-33). In light of this court's previous decision and the ALJ's finding of fibromyalgia as a "significant impairment," this omission is even more troubling.

3. The ALJ's determination regarding plaintiff's credibility is not supported by substantial evidence.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642 (citing Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-

exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair*, 885 F.2d at 603 (emphasis in original).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284. The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan, 169 F.3d at 600).

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As noted above, the ALJ did not perform a sufficient analysis to support her conclusions regarding plaintiff's credibility. The analysis did not articulate specific reasons for her conclusions, such as citing medical evidence that contradicted plaintiff's testimony regarding functional capacity (Tr. 630). Instead, the ALJ chose to discount plaintiff's testimony based in part, at least, on plaintiff's failure to follow the physician's recommendation to lose weight and exercise, considerations that are specifically prohibited by SSR 02-1p. At most, by pointing out some evidence in the medical records that contradict other portions of the medical record, and her testimony, the ALJ only demonstrates why additional evidence must be obtained in order to resolve these conflicts. The ALJ's assessment of the medical evidence is not supported by substantial evidence of record and is contrary to law.

Because the above analysis is dispositive and somewhat duplicative of the final two basis of appeal, the court adopts plaintiff's analysis of these issues and concludes that the ALJ's assessment of medical opinion evidence and Step 5 are not supported by the substantial evidence and are contrary to law.

4. Relief requested.

Plaintiff requests that the case be reversed and that benefits be awarded. The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large volume of medical and other evidence and the ALJ must develop the record properly.

Therefore, remand is appropriate to allow the Administration the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. See Sample, 694 F.2d at 642. Remanding the matter will allow the administration the opportunity not only to reconsider its decisions at steps three through five of the sequential disability evaluation, but also to fully consider the evidence plaintiff submitted to the Appeals Council.

REPORT AND RECOMMENDATION - 17

## CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 4, 2011, as noted in the caption.

Dated this 8th day of February, 2011.

J. Richard Creatura
United States Magistrate Judge